DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ROSS WEINGARTEN (NYBN 5236401)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6747
    FAX: (415) 436-7234
    Ross.weingarten@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSE SOTOMAYOR,<br><br>    Defendant. | CASE NO. CR 18-00483 SI<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Sentencing Date: September 6, 2019<br>Time: 11:00 a.m.<br>Judge: Hon. Susan Illston |

## I.   INTRODUCTION

Jose Sotomayor stands before the Court to be sentenced on September 6, 2019 following his guilty plea to Counts One and Two of the above-captioned Indictment, charging him with unlawful Dealing in Firearms Without a License, in violation of 18 U.S.C. § 922(a)(1)(A). There is no plea agreement in this case. The facts are not disputed: On August 14, 2018 and again on September 11, 2018, the defendant sold multiple firearms to an undercover officer. The defendant obtained the firearms in Las Vegas, and was selected to do so because, unlike his codefendant Dereke Holden, he was not prohibited from purchasing firearms. Including both transactions, the defendant sold 11 guns for a total of $13,200. On the day of his arrest, the defendant possessed four more firearms that he intended to sell to the undercover officer.

A serious custodial sentence is necessary to punish the dangerous conduct in this case, protect the community, and deter future criminal conduct by the defendant. The government agrees with Probation's recommendation, and believes that a sentence of 33 months in prison, to be followed by three years of supervised release, an expanded search condition, forfeiture of the firearms and ammunition involved in the offense, and a mandatory special assessment of $100 per count is appropriate.

## II.    OFFENSE CONDUCT (PSR ¶¶ 6-10)

The PSR accurately sets forth the offense conduct in this case. In sum, the defendant delivered and sold multiple firearms to an undercover officer on two separate occasions. The defendant's role was to travel to Las Vegas to procure firearms, which he would then bring back to the Bay Area to sell. On August 14, 2018, the date of the first sale, the defendant and Mr. Holden arrived at a pre-arranged location and met with the undercover officer. The defendant handed the undercover officer a shopping bag containing six firearms, and accepted $6,200 in payment. PSR ¶ 6. After the transaction, the undercover asked about buying additional firearms, and the defendant stated that he could procure more. Mr. Holden told the undercover that the defendant obtained the firearms from a source in Las Vegas. *Id*. ¶ 8. Three of the six firearms that the defendant sold had been reported stolen.

At the second transaction, which took place on September 11, 2018, the defendant sold the same undercover officer five firearms for $7,000 in cash. *Id*. ¶ 9. One of the guns sold had an extended magazine, and another was an AK47 assault rifle. *Id*. During the second deal, the defendant possessed a loaded firearm in his waistband before selling it to the undercover officer. *Id*.

Law enforcement set up a third and final purchase of firearms from the defendant, which took place on October 9, 2018. When the defendant arrived with the intention of selling more guns, officers attempted to arrest him but the defendant refused to open the door of the car he was in. *Id*. ¶ 10. The driver of the vehicle then briefly attempted to evade law enforcement before eventually stopping. *Id*. The defendant possessed four more firearms that day which he intended to sell for profit.

## III.   CRIMINAL HISTORY (PSR ¶¶ 27-30)

The government agrees with Probation that the defendant falls in criminal history category II. PSR ¶ 32. While the defendant's criminal history is not extensive, one arrest of the defendant while he

was on pretrial release on these charges is very troubling.  The defendant was indicted on these charged by a federal grand jury on October 4, 2018, and made his first appearance in federal court on October 10, 2018. Dkt. No. 3.  Exactly one month later, the defendant was charged with carjacking, robbery, and burglary based on an incident involving his girlfriend.  PSR ¶ 30.  According to the police report, the defendant and another individual entered the defendant's girlfriend's hotel room, where the other individual flashed a knife at the victim and then took two purses and exited the room.  *Id*.  The defendant and the other individual then got in the victim's car, and the other second individual pointed a knife at the victim when she tried to stop them.  *Id*.  They then drove off in the victim's car.  Soon after, officers located the vehicle and attempted to initiate a traffic stop, but the vehicle fled (it is not clear who was driving) and a high-speed chase ensued.  *Id*.  The stolen vehicle was traveling more than 100 miles an hour on the highway before evading capture.  *Id*.  The defendant and the other individual abandoned the vehicle on the side of the highway, and the defendant was arrested later that evening at his mother's home.  *Id*.

While the exact nature of the defendant's conduct in this matter is not known, to engage in this type of behavior only a month after being arraigned on serious federal criminal charges shows a stunning lack of respect and accountability on the part of the defendant.  The government is happy to report, however, that since that incident, the defendant has largely complied with the conditions of pretrial release.

## IV.   SENTENCING GUIDELINES CALCULATIONS (PSR ¶¶ 14-26)

The PSR accurately sets forth the defendant's Guidelines calculation.  His Adjusted Offense Level is 22.  PSR ¶ 22.  The government agrees the defendant should receive a three-level decrease for acceptance of responsibility.  *Id*. ¶¶ 24-25.  Accordingly, the defendant's Total Offense Level is 19.  *Id*. ¶ 26.  As the defendant is in criminal history category II, his Guidelines Range is 33-41 months.  Both the government and Probation recommend a 33-month sentence, which falls at the low-end of the defendant's Guidelines range.

## V.   SENTENCING RECOMMENDATION

### a.   Applicable Law

Section 3553(a) directs courts to consider a number of factors in determining an appropriate

sentence.  In this case, these factors indicate that a sentence of 33 months is sufficient, but not greater than necessary, to achieve the goals of sentencing.  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The key factors are the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, *id.* § 3553(a)(2)(A) the need to afford adequate deterrence to criminal conduct, *id.* § 3553(a)(2)(B); the need to protect the public from further crimes of the defendant, *id.* § 3553(a)(2)(C); and the need to provide the defendant with needed educational or vocational training, *id.* § 3553(a)(2)(D).

Although the Supreme Court's decision in *Booker* has rendered the Sentencing Guidelines advisory, the Guidelines still remain the "starting point and initial bench-mark" for sentencing. *Kimbrough v. United States*, 552 U.S. 85, 108, (2007) (internal quotation marks and citation omitted); *see Carty*, 520 F.3d at 991 (en banc); *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011).  While there is no presumption of reasonableness for a Guidelines range sentence, if a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Carty*, 520 F.3d at 991-992 (citing *Gall v. United States*, 552 U.S. 38, 50, (2007)); *see also United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) ("district court must start with the recommended Guidelines sentence, adjust upward or downward from that point, and justify the extent of the departure from the Guidelines sentence.").  As the Supreme Court recognized in *Gall*, "a major departure should be supported by a more significant justification than a minor one."  552 U.S. at 50.  Finally, "[a]s a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing."  *United States v. Armstead*, 552 F.3d 769, 777-78 (9th Cir. 2008); *see, e.g.*, *United States v. Treadwell*, 593 F.3d 990, 1001 (9th Cir. 2010).

    **b. A Sentence of 33 Months' Imprisonment Would Vindicate the Interests Set Forth in 18 U.S.C. § 3553(a)**

The defendant's offense requires a significant custodial sentence in this case in order to punish the defendant's dangerous conduct, to assure the safety of the community, and to deter the defendant

from future dangerous behavior. The defendant sold 11 guns to an undercover officer for $13,200. While his primary motivation was no doubt financial gain, the intended result of the defendant's actions was to put dangerous weapons on the streets of the Bay Area. That he ultimately sold these guns to an undercover officer and these guns did not, in fact, do further damage is not a reason to minimize the conduct or decrease its severity. By selling guns illegally, the defendant put the Bay Area community at risk as those guns could have been used to commit crimes.

The guns that the defendant sold were particularly dangerous, including two "Mini Dracos" and one SKS-style rifle. In addition, the defendant discussed procuring fully automatic weapons with the undercover officer after the first purchase of guns, and then planned to sell four more guns on the day he was ultimately arrested. In sum, the defendant engaged in repeated illegal gun trafficking, made thousands of dollars from doing so, and intended that these guns be sold onto the streets of the Bay Area where they could potentially cause immense harm. Protecting the public from further crimes is therefore an important consideration in this case, as the defendant's conduct put the citizens of the Bay Area at acute risk. 18 U.S.C. § 3553(a)(2)(C). It is also worth noting that the government does not know one way or another whether the defendant engaged in any other sales of firearms to individuals who were not law enforcement officials.

While it is true that the defendant did not have a significant criminal history when he engaged in this conduct, he actually used that to his advantage and as part of his scheme. The defendant's conduct involved traveling to Las Vegas to purchase guns, and then bring them back to the Bay Area for sale. The government does not know with certainty where or how the defendant purchased the firearms that he ultimately sold. What is clear from the evidence is that the defendant served as the buyer of the firearms because of his lack of a criminal record, whereas Mr. Holden was prohibited from legally purchasing guns. Therefore, the fact that the defendant does not have a significant criminal history should not weigh heavily on the Court's ultimate decision, as he used his lack of criminal history to effectuate the dangerous conduct he is to be sentenced for.

There are, however, characteristics of the defendant that lead the government to recommend a sentence at the low-end, rather than the middle or the high-end, of his Guidelines range. The defendant is still relatively young and experienced trauma in his youth. The accident that led to the death of his

step-father appears to have been the catalyst for the defendant's subsequent poor choices. PSR ¶ 39. He ultimately joined the Norteno gang at the age of 17, the same age when he had his first child. *Id*. ¶¶ 39-40. It appears that by the age of 21, the defendant on his own decided to leave the gang, and received a vicious beating as a result. *Id*. ¶ 42. The defendant has also maintained gainful, albeit sporadic, employment since 2016. *Id*. ¶ 52. The government hopes that the defendant can take advantage of the educational and vocational programs available to him while in B.O.P. custody and return to legal employment when is released so he can better take care of his children.

Finally, the government submits that the Court should submit the following expanded search condition as part of the defendant's terms of supervised release once he is released from custody:

> The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

Given the defendant's conduct for which he is to be sentenced and his failure to comply with the conditions of his pretrial release, the requested condition is necessary to serve the interests of deterrence and rehabilitation. The Court should also impose the other conditions requested by the Probation Officer, including the condition prohibiting defendant from contacting the victim without permission of his probation officer. The government also requests that the Court order that the defendant forfeit any interest in the firearms that he sold, or intended to sell, to the undercover officer.

## VI. CONCLUSION

In full consideration of the defendant's history and characteristics, together with the goals of sentencing, the government respectfully requests that the Court sentence the defendant to 33 months in prison. The government also recommends that defendant's prison term be followed by three years of supervised release, the search condition and no contact condition described above, a $100 special

//
//
//
//

assessment, and forfeiture of the firearms and ammunition involved in the offense.

DATED: August 30, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_____/s/_____
ROSS WEINGARTEN
Assistant United States Attorney

U.S. SENTENCING MEMO.                       7
CR 18-00483 SI